**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY<br><br>Plaintiff,<br><br>v.<br><br>EASTON-BELL SPORTS, INC.<br><br>Defendant. | CIVIL ACTION NO.<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

E.I. du Pont de Nemours and Company ("DuPont"), as and for its Complaint against Defendant Easton-Bell Sports, Inc. ("Easton-Bell") alleges as follows:

**NATURE OF THE CASE**

1. This suit arises from Easton-Bell's blatant efforts to trade on DuPont's substantial goodwill in the KEVLAR® trademark by making use of the mark on packaging for bicycle tires and locks—as depicted below—that is excessively prominent and attention-getting, suggests sponsorship or endorsement by DuPont, and that does not reflect the true and accurate relationship between DuPont and Easton-Bell's products:

 

2. The prominent display of the KEVLAR® mark on product packaging—including in a font **larger than Easton-Bell's own Bell® house mark** and surrounded by an oval and yellow background designed to be eye-catching—is likely to confuse, deceive, or mislead consumers into believing that Easton-Bell's products originate with or are otherwise affiliated, sponsored, or endorsed by DuPont, when they are not.  To stop this consumer confusion and the resulting harm to the public and to DuPont, DuPont brings this action for trademark infringement, unfair competition, and deceptive trade practices.

## THE PARTIES

3. Plaintiff DuPont is a Delaware corporation with a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

4. Defendant Easton-Bell is a Delaware corporation with a principal place of business at 5500 Scotts Valley Road, Scotts Valley, California.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under § 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over DuPont's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

6. This Court has personal jurisdiction over Easton-Bell because, on information and belief, Easton-Bell is doing business in this District, was incorporated in this District, has committed tortious acts in this District, has directed its infringing conduct into this District, and has otherwise established jurisdictionally sufficient contacts within this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Easton-Bell is doing business in, and therefore resides in, this District and a substantial part of the events giving rise to the claims occurred in this District.

- 3 -

## FACTUAL BACKGROUND

### The Well-Known KEVLAR® Trademark

8. Commercially available since 1973, KEVLAR® aramid fiber is a light-weight synthetic fiber that is ballistic and stab-resistant, and five times stronger than steel. KEVLAR® is manufactured, sold, and distributed by DuPont (and its affiliates and agents) generally in a pulp or resin form, to manufacturers and distributors who convert the resins and incorporate them into finished products—such as body armor, accessories, and equipment—to ensure that the products are safe and durable.

9. DuPont is the owner of multiple federal registrations for the distinctive KEVLAR® trademark covering resins for synthetic fibers, protective apparel, fibers, yarns, fabrics, clothing, and association services for law enforcement relating to protective apparel, including the following:

| MARK | Registration Date | Registration No. | Class of Goods |
| --- | --- | --- | --- |
| KEVLAR | 5/7/1974 | 983,080 | 022 |
| KEVLAR | 5/14/1974 | 984,031 | 023 |
| KEVLAR | 12/16/1997 | 2,121,970 | 001 |
| KEVLAR | 6/29/1999 | 2,257,820 | 017 |
| KEVLAR | 3/03/1987 | 1431185 | 024 |
| KEVLAR | 3/6/2001 | 2,434,020 | 009 |
| KEVLAR | 1/1/2002 | 2,525,567 | 025 |
| KEVLAR SURVIVORS' CLUB | 11/17/1987 | 1,465,988 | 042 |

True and correct copies of the Certificates of Registration are attached as **Exhibit 1**.

10. Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, for each of the foregoing registrations in Paragraph 9, and accordingly each is incontestable.

11. The KEVLAR® mark was coined by DuPont, and therefore is inherently distinctive to the consuming public.

12. As a result of DuPont's longstanding use and promotion of the KEVLAR® trademark, and as reflected in its incontestable trademark registrations, the consuming public trade recognizes and associates the KEVLAR® trademark with DuPont.  The KEVLAR® trademark has acquired a high degree of public recognition and distinctiveness as a symbol of the source of high quality products offered by DuPont, and embodies a valuable reputation and goodwill belonging exclusively to DuPont.

### Easton-Bell's Wrongful Conduct

13. Easton-Bell designs, supplies, and markets cycling and power sports equipment and accessories.

14. Since at least July 2012, Easton-Bell has offered for sale, sold, and marketed bicycle tires and locks in packaging that displays the KEVLAR® trademark in the center of an eye-catching yellow oval **in a font that is larger than the font in which Easton Bell's own Bell® trademark appears**.  Examples of Easton-Bell's prominent use of the KEVLAR® trademark on its packaging are shown below:

 

In addition to using the mark on its product packaging, Easton-Bell also has used the KEVLAR® trademark on the products themselves by, for example, putting the KEVLAR® mark directly on its tires.  DuPont is aware of at least 14 tire offerings and 6 lock offerings (reflecting 20 separate "SKU" numbers in total) on which Easton-Bell has made prominent use of DuPont's KEVLAR® trademark.  Products offered for sale or sold by Easton-Bell bearing the KEVLAR® trademark, either in product packaging or directly on the products themselves, are referred to as the "Infringing Products."

15. The Infringing Products have been sold through mass retailers such as Wal-Mart, Toys R Us, Target, and Kmart, e-tailers such as Amazon, EOpinions, and eBay, and through specialty bicycle retailers.

16. The Infringing Products marketed, offered for sale, and sold by Easton-Bell are not sponsored or endorsed in any way by DuPont.  DuPont has no ability to control the quality of Easton-Bell's products.

17. Easton-Bell's prominent, commercial uses of DuPont's KEVLAR® trademark have been and continue to be without authorization or permission from DuPont.

18.     Easton-Bell's use of the KEVLAR® trademark in connection with the Infringing Products is likely to deceive, confuse, and mislead consumers into believing that the Infringing Products are sponsored or endorsed, or in some other manner authorized, by DuPont, which they are not.  This is especially damaging with respect to those persons who perceive a defect or lack of quality in Easton-Bell's Infringing Products.  The likelihood of confusion, mistake, and deception engendered by Easton-Bell's misappropriation of DuPont's mark is causing irreparable harm to the goodwill symbolized by the KEVLAR® trademark and the reputation for quality that it embodies.

19.     Upon information and belief, Easton-Bell knowingly, willfully, intentionally, and maliciously made prominent use of the KEVLAR® trademark to exploit the commercial magnetism of the KEVLAR® brand and falsely suggest that Easton-Bell's Infringing Products are sponsored or endorsed by DuPont.

20.     Easton-Bell's actions are causing irreparable harm to DuPont and the public, and will continue to injure DuPont and the public unless enjoined by the Court.  Easton-Bell's wrongful acts will harm the goodwill associated with DuPont's KEVLAR® brand, and result in injury that cannot readily be quantified or recaptured.  Accordingly, DuPont and the public have a strong interest in stopping Easton-Bell's conduct.

**DuPont's Efforts to Amicably Resolve This Dispute**

21.     Upon learning of Easton-Bell's inappropriate use of the KEVLAR® trademark, DuPont sought an amicable resolution by contacting Mr. Thom Parks, Easton-Bell's Vice President of Corporate Affairs, in July 2012.  The parties engaged in discussions regarding the possibility of entering into a licensing agreement, but on November 9, 2012, Easton-Bell declined DuPont's proposed license.

22.     On December 21, 2012, in a further effort to resolve this dispute without resorting to litigation, Giselle Ruiz Arthur, DuPont's Corporate Trademark Counsel, sent a letter to Easton-Bell complaining about its continuing sale of the Infringing Products, and asking that it respond within fourteen days (*i.e.*, by January 4, 2013).  A copy of this letter is attached as **Exhibit 2**.

23.     On December 31, 2012, Martin H. Nguyen, Associate General Counsel for Easton-Bell, sent an email to Ms. Ruiz Arthur requesting an extension of time to respond to her letter, and DuPont agreed to an extension through January 11, 2013.

24.     Following a January 11, 2013 teleconference between Mr. Nguyen and Ms. Ruiz Arthur, DuPont reiterated its concerns and asked for a response from Easton-Bell by January 16, 2013.

25.     When Easton-Bell failed to provide a response to DuPont by the stated deadline, Ms. Ruiz Arthur followed up one last time on January 18, 2013, requesting a response by January 23, 2013.  DuPont received no substantive response.  (An email chain reflecting the communications discussed in paragraphs 21 through 25 is attached as **Exhibit 3**.)

26.     Instead, that same day, January 18, 2013—before the final deadline set by DuPont—and without first contacting DuPont, Easton-Bell filed an improper anticipatory declaratory judgment action in the United States District Court for the Northern District of California.  The case was assigned civil action number 13-cv-00283-NC.  A copy of the complaint is attached as **Exhibit 4**.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

27.     DuPont repeats and incorporates by reference the allegations in the preceding paragraphs.

28. Easton-Bell's use of DuPont's KEVLAR® trademark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Easton-Bell's goods are manufactured or distributed by DuPont, are associated or connected with DuPont, or have the sponsorship, endorsement, or approval of DuPont.

29. Easton-Bell is using a trademark that not only is confusingly similar to DuPont's federally registered KEVLAR® trademark, but actually is identical, in violation of 15 U.S.C. § 1114. Easton-Bell's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to DuPont's goodwill and reputation as symbolized by the KEVLAR® trademark, for which DuPont has no adequate remedy at law.

30. Easton-Bell's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DuPont's KEVLAR® trademark to DuPont's great and irreparable injury.

31. Easton-Bell has caused and is likely to continue causing substantial injury to the public and substantial, irreparable harm to DuPont, and DuPont is entitled to injunctive relief and to recover Easton-Bell's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125, 1116 and 1117.

**SECOND CLAIM FOR RELIEF**
**(Federal Unfair Competition)**

32. DuPont repeats and incorporates by reference the allegations in the preceding paragraphs.

33. Easton-Bell's use of DuPont's KEVLAR® trademark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Easton-Bell's goods are manufactured or distributed by DuPont, or affiliated, connected, or

associated with DuPont, or have the sponsorship, endorsement, or approval of DuPont.

34. Easton-Bell has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Easton-Bell's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and injury to DuPont's goodwill and reputation as symbolized by the KEVLAR® trademark, for which DuPont has no adequate remedy at law.

35. Easton-Bell's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DuPont's KEVLAR® trademark to the great and irreparable injury of DuPont.

36. Easton-Bell's conduct has caused, and is likely to continue causing, substantial injury to the public and to DuPont, and DuPont is entitled to injunctive relief and to recover Easton-Bell's profits, actual damages, enhanced profits, and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

## THIRD CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices)**

37. DuPont repeats and incorporates by reference the allegations in the preceding paragraphs.

38. Easton-Bell has been and is passing off its goods as those of DuPont, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Easton-Bell's goods, causing a likelihood of confusion as to Easton-Bell's affiliation, connection, or association with DuPont, and otherwise damaging the public.

39. Easton-Bell's conduct constitutes unfair and deceptive trade practices under The Delaware Uniform Deceptive Trade Practices Act, DEL. CODE ANN. tit. 6, §§2531-36.

40. DuPont has a business or trade interest at stake which is the subject of interference by Easton-Bell's deceptive trade practices.

41. Because Easton-Bell's unauthorized use of DuPont's KEVLAR® trademark has caused and is likely to continue to cause substantial injury to the public and to DuPont, and because Easton-Bell willfully engaged in deceptive trade practices, DuPont is entitled to injunctive relief and to recover damages, trebled damages, costs, and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
(Common Law Unfair Competition)

42. DuPont repeats and incorporates by reference the allegations in the preceding paragraphs.

43. Easton-Bell's acts constitute common law unfair competition, and have created and will continue to create a likelihood of confusion and a reasonable probability of deception to the irreparable injury of DuPont unless restrained by this Court, and DuPont has no adequate remedy at law for this injury.

44. Easton-Bell has acted with full knowledge of DuPont's use of, and statutory and common law rights to, the KEVLAR® trademark and without regard to the likelihood of confusion of the public created by Easton-Bell's activities.

45. Easton-Bell's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with DuPont's KEVLAR® trademark to the great and irreparable injury of DuPont.

46. As a result of Easton-Bell's acts, DuPont has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, DuPont is entitled to injunctive relief, an accounting of Easton-Bell's profits, damages, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, DuPont prays for judgment against Easton-Bell as follows:

A.   Easton-Bell and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Easton-Bell, or in concert or participation with Easton-Bell, be enjoined permanently, from:

   a. using the KEVLAR® trademark or any other copy, reproduction, or confusingly similar imitation or simulation of the KEVLAR® trademark on or in connection with Easton-Bell's goods or services;

   b. using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Easton-Bell's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, the trademarks, trade dresses, service marks, names, or logos of DuPont;

   c. using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Easton-Bell's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by DuPont, or are sponsored or authorized by or in any way connected or related to DuPont;

   d. using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Easton-Bell's goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dresses, service marks, names, or logos of DuPont; and

  e. passing off, palming off, or assisting in passing off or palming off, Easton-Bell's goods or services as those of DuPont, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint.

 B. Easton-Bell be ordered to cease offering for sale, marketing, promoting, and selling, to remove from retail stores, and to recall and retrieve all products bearing the KEVLAR® trademark or any other confusingly similar variation, which are in Easton-Bell's possession or have been shipped by Easton-Bell or under its authority, to any store or customer, including but not limited to, any wholesaler, distributor, distribution center, retail store, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Easton-Bell;

 C. Easton-Bell be ordered to deliver up for impoundment and for destruction, all products, packaging, bags, boxes, labels, tags, signs, receptacles, advertising, promotional material, stationary, or other materials in the possession, custody, or under the control of Easton-Bell that bear the KEVLAR® trademark or any other confusingly similar variation, or that otherwise unfairly compete with DuPont and DuPont's products;

 D. Easton-Bell be compelled to account for and disgorge to DuPont any and all profits derived by Easton-Bell from the sale or distribution of infringing goods as described in this Complaint;

 E. DuPont be awarded all damages caused by the acts forming the basis of this Complaint;

 F. Based on Easton-Bell's knowing and intentional use of DuPont's federally registered KEVLAR® trademark, the damages awarded be trebled and the award of Easton-Bell's profits be enhanced in accordance with the provisions of 35 U.S.C. § 284 and/or 15 U.S.C. § 1117(a) and (b);

G. Easton-Bell be required to pay DuPont the costs and reasonable attorneys' fees incurred by DuPont in this action pursuant to 15 U.S.C. § 1117(a) and DEL. CODE ANN. tit. 6, §§2531-36;

H. Easton-Bell be required to pay prejudgment and post-judgment interest on the damages and profits awards; and

I. DuPont have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DuPont respectfully demands a trial by jury on all claims and issues so triable.

Dated: January 28, 2013

Respectfully submitted,

  /s/ P. Clarkson Collins, Jr.
P. Clarkson Collins, Jr. (#739)
Kenneth L. Dorsney (#3726)
Thomas E. Hanson, Jr. (#4102)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
pcollins@morrisjames.com

William H. Brewster (GA-080422)
bbrewster@ktslaw.com
Jessica A. Ash (GA-133052)
jash@ktslaw.com
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 541-3240

*Attorneys for Plaintiff*